UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID C.,[1] | ) | CIVIL ACTION NO. 4:23-CV-0488 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY, *Social Security* | ) | |
| *Commissioner*,[2] | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff David C., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before the undersigned upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On March 10, 2021, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 156-157; Doc. 11-5, pp. 2-3).  In this application, Plaintiff alleged he became disabled on September 30, 2020, when he was 60 years old, due to the following conditions: severe rheumatoid arthritis; swelling/pain of any joints in the body; disables walking/standing/sitting; fatigued; high blood pressure; high cholesterol; shortness of breath. (Admin. Tr. 177; Doc. 11-6, p. 3). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, remember, concentrate, and use his hands. (Admin. Tr. 206; Doc. 11-6, p. 32). Plaintiff has at least a high school education. (Admin. Tr. 24; Doc. 11-2, p. 25). Before the onset of his impairments, Plaintiff worked as a building superintendent and a supervisor of building maintenance. (Admin. Tr. 23; Doc. 11-2, p. 24).

On May 18, 2021, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 11-2, p. 16). On October 28, 2021,

Plaintiff's application was denied on reconsideration. (Admin. Tr. 15, Doc. 11-2, p. 16). On November 2, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 15; Doc. 11-2, p. 16).

On February 18, 2022, Plaintiff, assisted by his counsel, testified during a telephone hearing before Administrative Law Judge Alexander Klibaner (the "ALJ"). (Admin. Tr. 29-54; Doc. 11-2, pp. 30-55). On March 30, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 25; Doc. 11-2, p. 26). On April 28, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 154; Doc. 11-4, p. 90).

On January 26, 2023, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 11-2, p. 2).

On March 20, 2023, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court find that Plaintiff is entitled to Social Security Disability Insurance benefits or remand this case for a new hearing. (Doc. 1, p. 2).

On May 19, 2023, the Commissioner filed an answer. (Doc. 10). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial

evidence. (Doc. 10). Along with his answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 12), the Commissioner's Brief (Doc. 14), and Plaintiff's Reply (Doc. 15 ) have been filed. This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing

---

[3] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

evidence or fails to resolve a conflict created by the evidence.[6] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And

---

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

---

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

### B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[13] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).
[14] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

retirement age, and became disabled prior to the date on which he or she was last insured.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

---

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).
[16] 20 C.F.R. § 404.1520(a).
[17] 20 C.F.R. § 404.1520(a)(4).
[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).
[19] 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   Whether the ALJ failed to resolve an apparent conflict between the RFC limitation to "Occasional Overhead Reaching" and the frequent reaching required by the job identified at step five?; and

(2)   Whether the ALJ's decision is not supported by substantial evidence because he improperly reasoned that the Plaintiff has skills that are transferable to jobs existing in a significant number in the national economy?

(Doc. 12, p. 9).

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his March 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2025.

---

[20]42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a); *Mason*, 994 F.2d at 1064.
[21] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

(Admin. Tr. 17; Doc. 11-2, p. 18). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between January 2021 (when Plaintiff stopped working) and March 30, 2022 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 18; Doc. 11-2, p. 19).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: rheumatoid arthritis and osteoarthritis. (Admin. Tr. 18; Doc. 11-2, p. 19). The ALJ also found that during the relevant period, Plaintiff had the following non-severe impairments: hypertension; high cholesterol; asthma; history of back surgery; gout; and degenerative joint disease. (Admin Tr. 18-19; Doc. 11-2, p. 19-20).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19; Doc. 11-2, p. 20).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except:

he could frequently handle and finger bilaterally. He could occasionally reach overhead bilaterally. He could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He could occasionally balance on narrow or slippery surfaces. He could occasionally stoop, kneel, crouch, and crawl. He could tolerate occasional exposure to pulmonary irritants and vibration, such as power tools. He could tolerate occasional exposure to workplace hazards, such as hazardous machinery.

(Admin. Tr. 19; Doc. 11-2, p. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 23-24; Doc. 11-2, pp. 24-25).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 24-25; Doc. 11-2, pp. 25-26). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following representative occupation: a maintenance service dispatcher (DOT 239.367-014). (Admin. Tr. 24-25; Doc. 11-2, pp. 25-26).

### B. WHETHER THE ALJ FAILED TO RESOLVE AN APPARENT CONFLICT BETWEEN THE RFC LIMITATION TO OCCASIONAL OVERHEAD REACHING AND THE FREQUENT REACHING REQUIRED BY THE JOB IDENTIFIED AT STEP FIVE

Plaintiff's first argument is that the RFC limits him to occasional overhead reaching, but the one job identified at step five requires frequent reaching. (Doc. 12, pp. 9-12). Plaintiff asserts that this is an apparent conflict between the DOT and the

Vocational Expert's ("VE") testimony that the ALJ was required to resolve pursuant

to SSR 00-4p. *Id*. Plaintiff argues:

> [t]he ALJ's error in failing to appropriately resolve this conflict is not
> harmless. Given that the Plaintiff is a person closely approaching
> retirement age, the ALJ's finding that he is limited to no more than light
> exertional employment, and the inability to perform his past work, the
> finding of this singular transferable skills position is the only barrier to
> a finding of disability in this case. Because the conflict was not properly
> resolved, the ALJ should not have relied on the vocational expert's
> testimony to support his finding that Plaintiff is not disabled and this
> case must be remanded for compliance with SSR 00-4p. See *Rivera-
> Negron v. Astrue*, 2013 U.S. Dist. LEXIS 155440, 2013 WL 5823713
> (E.D.Pa., Oct. 30, 2013) (where ALJ failed to resolve conflict between
> vocational expert testimony and DOT, decision not supported by
> substantial evidence).

(Doc. 12, pp. 11-12).

The Commissioner responds by arguing that the DOT is silent on overhead

reaching and so there was no apparent conflict between the DOT and VE testimony

that the ALJ was required to resolve. (Doc. 14, pp. 8-11). Thus, the Commissioner

argues, the ALJ was permitted to rely on the VE's testimony and properly did so. *Id*.

In reply, Plaintiff acknowledges "that because DOT is silent on overhead

reaching, [ ] the ALJ was permitted to rely on testimony from the vocational expert."

(Doc. 15, p. 2). This said, Plaintiff argues that,

> reliance on the vocational expert's testimony does not eliminate the
> requirements of SSR 00-4p. In fact, this is precisely why such a
> regulation was instituted by the Agency; blind reliance on testimony
> was to be avoided and sufficient explanations must be included in both

the testimony and the determination to ensure that the reliance on the testimony was supported by substantial evidence.

Defense opines that SSR 00-4p only relates to conflicts between the DOT and the vocational expert's testimony, and that this is not one of those instance because the DOT is silent on overhead reaching and thus there cannot be a conflict to resolve. This is an incomplete evaluation however.

SSR 00-4p specifically states that **"Evidence from VEs or VSs can include information not listed in the DOT…Information about a particular job's requirements** or about occupations **not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling**. SSR 00-4p (emphasis added). Here, the testimony of the expert does in fact include information about a particular job's requirements that are not listed in the DOT given that the DOT does not delineate between the direction of reaching involved. Therefore, SSR 00-4p does in fact find this to be something that requires a reasonable explanation for a basis to rely upon the testimony. *Id*. As such, the ruling requires that the explanation be made on the record and that the administrative law judge explain in his decision how the conflict was resolved. *Id*.; *Burns v. Barnhart*, 312 F.3d 113 (3d Cir. 2002)

Regardless, while some courts have found where the DOT is silent there may be no conflict, in several such cases, "detailed questioning" of the VE was found to satisfy the applicable standards. See, e.g., *Brown v. Colvin*, No. 15-323, 2016 U.S. Dist. LEXIS 160020, at *11 (E.D. Pa. Nov. 17, 2016). Here, the ALJ did inquire about the DOT's silence on the subject, and further, where it was silent, asked the expert if they relied on their professional experience. Tr. 50. Merely asking the VE whether his or her testimony is inconsistent with the DOT but instead based on their professional experience and receiving an affirmative response without further explanation is insufficient. Such a boilerplate question and answer does not meet the detailed questioning standard referenced above. There must be a "reasonable explanation" in the response to the question. *Burns*, 312 F.3d at 127 (quoting SSR 00-4p). The expert provided no specific personal experience or context for her

reliance on her professional experience. It is this lack of specificity that SSR 00-4p was intended to protect against. As a matter of public policy, we cannot simply rely on someone stating their knowledge is based on professional experience without ever fact checking the basis. As such, the testimony from the VE and the follow-up from the ALJ was deficient and cannot support the determination in this matter.

For these reasons, Defense's argument that no conflict exists and that the ALJ was permitted to rely on such basic testimony from the VE without further investigation fails.

(Doc. 15, pp. 2-3).

SSR 00-4p begins by outlining its purpose:

In particular, this ruling emphasizes that before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved.[22]

SSR 00-4p then details the resolution of any such conflicts:

Resolving Conflicts in Occupation Information

Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully

---

[22] SSR 00-4p, 2000 WL 1898704, at *1 (S.S.A. Dec. 4, 2000).

develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

### Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information

Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.

. . . .

### Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the

conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.[23]

SSR 00-4p also imposes upon the ALJ the affirmative responsibility to ask about conflicts between VE evidence and information in the DOT.[24]

Contrary to Plaintiff's assertions, which presuppose a conflict, we find no conflict between the VE's testimony and the information contained in the DOT. Plaintiff conceded the DOT is silent on overhead reaching. (Doc. 15, p. 2). "As correctly indicated by the Commissioner, when an ALJ relies on a VE's expertise concerning specific limitations to which the DOT is silent, a conflict does not exist."[25] "As such there is no harmful error in [an] ALJ's decision to rely upon the vocational expert's testimony without identifying and resolving a conflict between that testimony and the DOT, as no such conflict exists."[26]

---

[23] *Id*. at *2, 4.

[24] *Id*. at *4.

[25] *Tammero v. Saul*, No. 3:19-CV-02234, 2020 WL 7480661, at *9 (M.D. Pa. Dec. 18, 2020). *See also Kowal v. Saul*, No. CV 18-1350, 2020 WL 490962, at *3 (W.D. Pa. Jan. 30, 2020) (collecting cases); *Sanborn v. Comm'r. of Soc. Sec.*, 613 F.App'x. 171, 177 (3d Cir. 2015) (finding that the DOT does not include sit/stand options in job descriptions and, [a]ccordingly, the ALJ did not erroneously fail to inquire into an explicit conflict between the VE's testimony and the DOT."); *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *7 (E.D. Pa. May 22, 2017) ("The Third Circuit Court of Appeals has recognized that the DOT's silence with regard to the sit/stand option does not place it in conflict with jobs identified by a VE.").

[26] *Kowal*, 2020 WL 490962, at *3 (quoting *Stockett v. Comm'r Soc. Sec.*, 216 F.Supp.3d 440, 460-61 (D.N.J. 2016) (internal quotation marks omitted) "*See also Parker v. Colvin*, Civ. No. 13-1222, 2014 WL 4662095, at * 9 (W.D. Pa. Sept.

While the DOT is silent on overhead reaching, "the regulations provide that a VE may provide more detailed information concerning jobs identified by the ALJ that are not available in the DOT."[27] In this case, the hypotheticals posed to the VE explicitly included an instruction from the ALJ to assume an individual who can occasionally reach overhead bilaterally. (Admin. Tr. 48-50; Doc. 11-2, pp. 49-51). In answering the ALJ's posed hypothetical the VE identified dispatcher, maintenance service as a job Plaintiff could perform in keeping with the suggested RFC of the hypothetical. (Admin. Tr. 48; Doc. 11-2, p. 49). The VE was qualified to provide this testimony, and Plaintiff stipulated to her qualifications at the hearing.[28] "Since the VE's testimony was given in response to a hypothetical

---

19, 2014) (explaining that no conflict existed which required remand where the jobs identified in the DOT required constant / frequent reaching and the RFC precluding reaching because the DOT is silent as to whether the reaching was "overhead" in nature).

[27] *Tammero*, 2020 WL 7480661, at *9. *See* 20 C.F.R. § 404.1566(d)-(e).

[28] Plaintiff argues that "[a]s a matter of public policy, we cannot simply rely on someone stating their knowledge is based on professional experience without ever fact checking the basis." (Doc. 15, p. 3). In his decision the ALJ wrote:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and its associated publication the SCO. [The VE] testified that areas not covered in the DOT were based on her professional experience and knowledge of the labor market. I find the comprehensive testimony of the vocational expert, in addition to her extensive knowledge, which she relied on when identifying these positions is sufficient to rely on.

(Admin. Tr. 25; Doc. 11-2, p. 26).

question describing all of Plaintiff's work-related restrictions, it constituted 'substantial evidence' that jobs consistent with his abilities and limitations existed in the national economy."[29]

Accordingly, Plaintiff's argument that "[b]ecause the conflict was not properly resolved, the ALJ should not have relied on the vocational expert's testimony to support his finding that Plaintiff is not disabled and this case must be remanded for compliance with SSR 00-4p," is not a basis for remand. (Doc. 12, p. 12).

---

It appears the basis of the VE's testimony, her professional experience, was fact checked by a review of her resume and that she was not simply taken at her word as Plaintiff asserts. The VE's resume is a part of the record, with the ALJ asking her if the resume on file was "a true and accurate description of your professional qualifications?" (Admin. Tr. 46; Doc. 11-2, p. 47). The VE answered, "[y]es, it is, Your Honor." *Id*. Plaintiff's attorney at his hearing was then given the chance to object to the VE's qualifications but did not do so. (Admin. Tr. 47, Doc. 11-2, p. 48). A review of the VE's resume reveals she has over twenty years of experience in vocational rehabilitation; founded a company over ten years ago that continues to provide services including vocational expert testimony, individual consultations, vocational counseling virtually and via telephone, career and vocational assessments and reports, and job placement assistance to individuals with disabilities and organizations serving this population; has post-graduate education in vocational rehabilitation counseling; and is a member of the American Board of Vocational Experts and the International Association of Rehabilitation Professionals, including membership in the Social Security Vocational Expert Section. (Admin Tr. 233-35; Doc. 11-6, pp. 59-61).

[29] *Parker v. Colvin*, No. 2:13-CV-1222, 2014 WL 4662095, at *9 (W.D. Pa. Sept. 18, 2014) (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 206 (3d Cir. 2008)).

C.   **WHETHER THE ALJ IMPROPERLY REASONED THAT THE PLAINTIFF HAS SKILLS THAT ARE TRANSFERABLE TO JOBS EXISTING IN A SIGNIFICANT NUMBER IN THE NATIONAL ECONOMY**

Plaintiff's second overarching argument is that the ALJ improperly reasoned he has skills transferable to jobs existing in a significant number in the national economy. (Doc. 12, pp. 12-17; Doc. 15, pp. 4-5).

Social Security regulations provide:

(d) Skills that can be used in other work (transferability)—

(1)   What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

(2)   How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which—

(i)   The same or a lesser degree of skill is required;

(ii)   The same or similar tools and machines are used; and

(iii)   The same or similar raw materials, products, processes, or services are involved.

(3)   Degrees of transferability. There are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities

among jobs. A complete similarity of all three factors is not necessary for transferability. However, when skills are so specialized or have been acquired in such an isolated vocational setting (like many jobs in mining, agriculture, or fishing) that they are not readily usable in other industries, jobs, and work settings, we consider that they are not transferable.

(4)     Transferability of skills for persons of advanced age. If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s). We will decide if you have transferable skills as follows. If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See § 404.1567(a) and § 201.00(f) of appendix 2.)[30]

Further,

If the issue determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the

_____

[30] 20 C.F.R. § 404.1568(d)(1)-(4).

services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.[31]

Social Security Ruling 82-41 states:

6. *Findings of fact in determinations or decisions involving transferability of skills*. When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.

When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy). This evidence may be VS statements based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d). It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.[32]

The SSA's Program Operations Manual System ("POMS") provides that "[a]

person's skills are most likely to transfer between jobs of the same or lower skill

level; and, which use the same or similar: tools; machines; raw materials; products;

---

[31] 20 C.F.R. § 404.1566(e).
[32] SSR 82-41, 1982 WL 31389 at *7 (S.S.A. 1982).

processes; or services. **NOTE:** An absolute similarity of all these factors is not

necessary."[33] POMS DI 25015.017 also provides:

> When you make a finding that the claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in your determination. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy).
>
> This evidence may include statements by a Vocational Specialist (VS) based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d).[34]

POMS DI 25015.017 provides eight steps an ALJ should use in making the

transferability of skills assessment and states an ALJ,

> generally must cite at least three occupations when documenting capacity for other types of work. However, you may cite fewer than three if the occupation(s) provide enough jobs that clearly there are a significant number of jobs in the national economy within the cited occupation(s). This evidence may be VS statements based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d).[35]

---

[33] Program Operations Manual System DI 25015.017(C)(3), available at http://pomsresource.org/poms/DI-25015.017/ability-to-perform-other-work (last visited Mar. 28, 2024) (emphasis in original).

[34] Program Operations Manual System DI 25015.017(H).

[35] Program Operations Manual System DI 25015.017(I). *See also* Program Operations Manual System DI 25025.030(C)(1) ("Cite three occupations . . . .).

It is important to note that the POMS "lack[s] the force of law and create[s] no judicially-enforceable rights."[36]

Plaintiff argues that:

> the vocational expert provided a singular job and stated that 35,000 jobs exist in the national economy. Tr. 24. The POMS cited states that you generally must cite to at least 3 jobs, but can do less if "clearly there are a significant number of jobs in the national economy". POMS DI 25015.017(I). Avoiding providing the full 3 jobs and using one that only has 35,000 in the national economy does not comply with the POMS. Therefore, further evidence is needed to determine if there are substantial jobs in the national economy to which Plaintiff's skills would transfer. If these job numbers do not exist, then he should have been found disabled pursuant to the Medical Vocational Guidelines due to his age, education, and previous work experience.

(Doc. 12, pp. 12-13).[37]

In response, the Commissioner argues that the POMS has no legal force and is not a source of judicially enforceable rights. (Doc. 14, p. 14). It is quite clear the Commissioner is correct. Again, the Third Circuit has found the POMS "lack[s] the

---

[36] *Bordes v. Comm'r Soc. Sec.*, 235 F.App'x 853, 859 (3d Cir. 2007) (collecting cases).

[37] The POMS also includes the following language: "EXCEPTION: You may cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three occupation(s). Make this determination using vocational specialist advice supported by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d) or other reliable sources of occupational information." Program Operations Manual System DI 25025.030(C)(1).

force of law and create[s] no judicially-enforceable rights."[38] Thus the ALJ was not

required to cite to three jobs and this is not a basis for remand.[39]

Plaintiff next argues,

Regardless, Plaintiff argues that the blind reliance on the expert's testimony is misplaced here because delving further into the classifications of the Plaintiff's past composite work compared to the given position, they are not closely enough related to render transferable skills.

For example, the first three numbers of a DOT code demonstrate particular occupational groups. While the parts of the Plaintiff's past composite work are similar with notations of 381 (properties and cleaners) and 382 (janitors), the step five transferable skills position is entirely different with the numbers of 239 (information and message distribution occupations).

Next, each position is assigned a GOE code which are mismatched in this instance. The Guide for Occupational Exploration (GOE)9 provides users with information about the interests, aptitudes, adaptabilities, and other requisites of occupational groups. *RHAJ*, page 11-110. This is meant to provide assistance for others with career exploration and occupational changes. *GOE*, page 1. In this instance, both parts of the Plaintiff's composite past work share the same GOE code, which is 05.12.18. The category is for Elemental Work: Mechanical, and more specifically cleaning and maintenance of mechanical work. *GOE*, pages 127, 133. The position of maintenance service dispatcher, however, has a GOE code of 07.04.05, which is for

---

[38] *Bordes*, 235 F.App'x at 859.

[39] To the extent Plaintiff argues that 35,000 jobs is not a significant number, in the Third Circuit, if a plaintiff can perform 35,000 jobs in the national economy, and "nothing suggests [the] jobs ... are unusually clustered in 'relatively few locations' far from the [ ] region where [the plaintiff] lives," a significant number of jobs exist which the plaintiff can do, and the plaintiff will be found not disabled. *Lamoureux v. Comm'r of Soc. Sec. Admin.*, No. 21-1677, 2021 WL 5860738, at *2 (3d Cir. Dec. 10, 2021) (quoting 20 C.F.R. § 404.1566(b)).

Oral Communications, more specifically including information transmitting and receiving. *GOE*, pages 237, 239.

Furthermore, the jobs do not share similar Work Fields either. For the two parts of the Plaintiff's composite job the Work Fields are 021- Stationary Engineering and 031- Cleaning. EM21065. The step five position offered, however, has a Work Field of 231- Verbal Recording- Record Keeping. *Id*.

Jobs also can be given MPSMS codes, which describe materials, products, subject matter, and/or services being rendered. *RHAJ*, page 5-1. The Plaintiff's past work appears as though it would have very different materials and products, subject matter, and services based on the classifications. For example, there are janitorial services that fall under the MPSMS code of 905, whereas for a dispatcher it would more likely be services that are telephone communications (861) or bookkeeping services (892). *RHAJ*, page 5-3, 5-4, 5-20, 5-21, 5-22. Similarly, their subject matters would inherently be different as again, the dispatch position would require communication services (860). *Id*., at 5-20. His past work would more likely include the subject matter of sanitary services (870) or even mechanical engineering (706). *Id*., at 5-18, 5-21.

It is apparent from these three categories that neither parts of the Plaintiff's composite past work share any similarities in grouping, interests, work fields, or MPSMS codes. Directly Transferable Occupations share at least one of the three-digit Work Fields known from each job of the past work history AND have at least one of the same three-digit MPSMS codes from any of those jobs done in the past. Directly transferable occupations have primary job duties that are very similar to past work. Little or no learning of job duties is anticipated. Here, it is apparent that there is no similar three-digit Work Field so the analysis fails there. It is also clear that the other categories leave significant gaps as well.

Despite the expert's testimony that there would be little to no vocational adjustment required from his past work to this new position, there appears to be a significant conflict here based on the classifications of the work. The expert provided no true explanation for how there was

little to no vocational adjustment required beyond stating that because the Plaintiff took work orders and prioritized them in his past work, he would be able to accomplish the skills required of this new job. Tr. 51-53. There is no explanation by the expert nor the ALJ for the lack of support from these categories and a formal transferable skills analysis. In order to establish transferability of skills for such individuals (over 60), the semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation. SSR 82-41. It does not appear that based on the information available from the classifications of the positions that this would be possible. Once again, while an expert may testify about their experience at a hearing, an ALJ is supposed to follow the requirements of SSR 00-4p instead of blindly relying on their testimony. SSR 00-4p. The lack of development on the transferable skills conflict undermines the ALJ's decision and causes it to lack substantial support, entitling remand for the Plaintiff in this matter. In accordance with SSR 00-4p, the ALJ must then resolve the conflict by determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert's testimony.

(Doc. 12, pp. 13-15) (footnotes omitted).

In response, the Commissioner argues generally that the ALJ was allowed to rely on VE testimony in his analysis of the transferability of skills. (Doc. 14, pp. 11-12). The Commissioner asserts that is what the ALJ properly did here:

Specifically, the vocational expert testified that the skills required of a Dispatcher, Maintenance Service are "[r]ecordkeeping, organizational skills, communication and systemizing information and data, routing, posting, following-up," and that Plaintiff acquired those skills from his past relevant work (Tr. 49). Then when the ALJ asked the vocational expert, "[a]re there any skills required of that dispatcher, maintenance service occupation that [Plaintiff] does not have from his past work," the vocational expert responded, "no" (Tr. 49). Thereafter, in response to questioning by Plaintiff's counsel, the vocational expert explained

that there would be little to no adjustment in terms of tools, work processes, and work settings with extensive elaboration where the vocational expert discussed how Plaintiff performed his past job (Tr. 50- 53). The ALJ relied on the vocational expert's testimony (Tr. 24-25).

Citing to the agency's Program Operations Manual System (POMS), Plaintiff contends his interpretation of occupational groups, GOE codes, and MPSMS codes in the DOT undermines the vocational expert's testimony (Pl.'s Br. at 10-11). But the vocational expert explained that her testimony was based on how Plaintiff "describe[d] the[ ] skills in his past work" (Tr. 51). And, as explained by the Eastern District of Texas when rejecting a similar argument last year, "the POMS reinforces that an ALJ can rely on the VE's testimony to ascertain whether job skills are transferable based on the VE's expertise and the VE's knowledge of the claimant's work history." *Mann v. Kijakazi*, 2022 WL 4477335, at *7; POMS DI 25015.017(H), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015017 (explaining an ALJ's transferability of skills analysis may be based on "statements by a Vocational Specialist (VS) based on expert personal knowledge").

(Doc. 14, pp. 12-13) (footnote omitted).

In his reply brief, Plaintiff acknowledges a complete similarity of the factors listed in 20 C.F.R. § 404.1568(d)(2) is not required for transferability. (Doc. 15, p. 4). Plaintiff goes on to argue:

Defense argues that Plaintiff's reliance on the POMS is misplaced, however, while the POMS does lend support to the Plaintiff's case, the claim also relies on the Code of Federal Regulations as cited above. In this instance, two of the most probative factors in transferability according to the Code of Federal Regulations are whether the jobs have the same or similar tools and machines are used and the same or similar raw materials, products, processes or services are involved. 20 C.F.R. § 404.1568(d)(2). However, as demonstrated by the Plaintiff's original brief, this simply is not the case. The positions do not share the same Work Field codes, and these codes determine whether there would be a

reasonable match between the tools and machines used on the prior work and new job. Plaintiff Brief at 11-12. Furthermore, the MPSMS codes describe the materials, products, subject matter, and/or services being rendered. Plaintiff Brief at 12; RHAJ, page 5-1. As explained, the Plaintiff's past composite work and the position offered by the vocational expert do not appear to share any MPSMS codes either. *Id.*

It is improbable then that the expert's testimony can stand on its own without further explanation as the significant probative parts of transferability have seemingly not been met in this instance. For this reason, the ALJ's reliance on the expert's testimony without further investigation cannot stand and remand is warranted for further consideration of the matter.

(Doc. 15, pp. 4-5).

As to Plaintiff's reliance on the POMS, we once again note the POMS creates no judicially enforceable rights and does not have the force of law.[40] The POMS also states that VE testimony based on his or her personal knowledge is acceptable evidence in making a transferability of skills assessment.[41]

Plaintiff appears to assert that although the VE testified there would be little to no vocational adjustment required from Plaintiff's past work to the dispatcher, maintenance service position, there is a conflict "based on the classifications of the work" such that SSR 00-4p applies. (Doc. 12, p. 15). Plaintiff argues that because the codes do not match, two of the factors probative of transferability in 20 C.F.R. § 404.1568(d)(2) do not favor finding transferability. (Doc. 15, pp. 4-5). Plaintiff

---

[40] *Bordes*, 235 F.App'x at 859.
[41] Program Operations Manual System DI 25015.017(H) and (I).

asserts that "Directly Transferable Occupations share at least one of the three-digit Work Fields known from each job of the past work history AND have at least one of the same three-digit MPSMS codes from any of those jobs done in the past." (Doc. 12, p. 14). Plaintiff cites to no persuasive or precedential authority requiring this. Plaintiff argues that the "lack of development on the transferable skills conflict undermines the ALJ's decision." (Doc. 12, p. 15). Plaintiff argues that the expert did not provide a "true" explanation for how there would be little to no vocational adjustment and that "based on the information available from the classifications of the positions," found in the codes he cites to, it would not be possible for there to be little to no vocational adjustment. (Doc. 12, p. 15).

We "disagree that these codes do the work that [Plaintiff] requires of them."[42] The Commissioner cites to *Mann v. Kijakazi* where the Eastern District of Texas rejected an argument similar to Plaintiff's:

> Ms. Mann also points to the SSA's Program Operations Manual System ("POMS") § DI25015.017, which covers transferability of skills and instructs ALJs to search for occupations related to the claimant's past relevant work by looking for the same or similar: "guide for occupational exploration (GOE) code; materials, products, subject matter, and services (MPSMS) code; work field (WF) code; occupation group (first three digits of DOT code); or industry designation." *See Transferability of Skills Assessment (TSA)*, Program Operations Manual System (POMS), SOC. SEC. ADMIN. (June 21, 2017), https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015017. Ms. Mann

---

[42] *Bird v. Berryhill*, No. CV 17-1785-CJB, 2019 WL 1568519, at *12 (D. Del. Apr. 10, 2019).

interprets this POMS provision to mean that the ALJ must exclude jobs if they do not have the same codes or industry designations as a claimant's past relevant work. But the POMS does not actually say that. Although the POMS states that a person's skills are most likely to transfer between jobs of the same or lower skill level and the "same or similar" tools, materials, products, processes or services, the POMS also notes that "[a]n absolute similarity of all of these factors is not necessary." *Id.* In addition, in the section entitled "Additional tips to assist in the TSA," the POMS notes that skills "are likely to transfer" from "highly skilled occupations" or "occupations with skills applicable across a number of industries." *Id.* Nursing is listed in the POMS as one of the common jobs with skills highly likely to transfer to other light work. *Id.* Finally, like SSR 82-41, the POMS itself instructs the ALJ to rely on VE testimony that is "based on [the VE's] expert personal knowledge" when making the requisite transferability findings, and directs the ALJ to consider "*all* relevant vocational sources ... [when] mak[ing] a judgment about whether skills gained in PRW [past relevant work] are useable in other work within the claimant's RFC." *Id.* (emphasis added). As such, the POMS reinforces that an ALJ can rely on the VE's testimony to ascertain whether job skills are transferable based on the VE's expertise and the VE's knowledge of the claimant's work history.[43]

Plaintiff argues in response that this case is a "Fifth Circuit case and should not be used as controlling law in this instance." (Doc. 15, p. 4). Plaintiff does not elaborate on this argument or explain why we should not find the reasoning of the Eastern District of Texas persuasive. And persuaded we are, particularly by that Court's correct observation that "the POMS reinforces that an ALJ can rely on the VE's

---

[43] *Mann v. Kijakazi*, No. 4:21-CV-489-ALM-KPJ, 2022 WL 4477335, at *7 (E.D. Tex. Aug. 30, 2022), *report and recommendation adopted*, No. 421CV00489ALMKPJ, 2022 WL 4474145 (E.D. Tex. Sept. 26, 2022).

testimony to ascertain whether job skills are transferable based on the VE's expertise and the VE's knowledge of the claimant's work history."

Moreover, "even to the extent that [its] relevant DOT job codes differ[s] from those relating to [Plaintiff's] prior employment position, that certainly is not dispositive. After all, the applicable social security regulations state that 'complete similarity' between jobs is not required."[44] It appears that Plaintiff is, at least to some extent, really asking the Court to reweigh the evidence: "to compare the evidence mustered by the VE to that related to these codes, and to then determine that the quantum of evidence swings more heavily in favor of [Plaintiff] than the Commissioner."[45] We are not permitted to do so and so we do not.[46]

Plaintiff further argues that the VE's testimony was insufficient in explaining how there would be little to no vocational adjustment because the VE relied only on Plaintiff's description of his past work, and the ALJ "blindly" relied on the VE's testimony. (Doc. 12, p. 15; Doc. 15, p. 5). We are not persuaded. We find that the ALJ's transferability of skills assessment conformed to SSR 82-41 and the applicable regulations.

---

[44] *Id*. (quoting 20 C.F.R. § 404.1568(d)(3)).
[45] *Bird*, 2019 WL 1568519, at *12.
[46] *Zirnsak*, 777 F.3d at 611.

The VE's testimony on the subject of the transferability of skills and vocational adjustment was thorough, and Plaintiff's counsel had the opportunity to question the VE and did so. The testimony was as follows:

[ALJ:] Have you reviewed the vocational information in the file and listened to [Plaintiff's] testimony?

[VE:] Yes, I have, Your Honor.

ALJ: Mr. Deverell, do you have any objection to [the VE's] professional qualifications?

ATTY: No, Your Honor.

BY ADMINISTRATIVE LAW JUDGE:

Q      [VE,] do you need any additional information before providing vocational testimony?

A      I do not, Your Honor.

Q      Can you please classify for us [Plaintiff's] past work in terms of the Dictionary of Occupational Titles?

A      Yes, Your Honor, it's -- he's describing a composite job and that is he was a superintendent, building, DOT code 382.664-010, medium, SVP: 3. But the Claimant describes the exertional level performed by him as being at the very heavy level. He was also a supervisor of building maintenance and DOT code is 381.137-010, medium, SVP: 6 and that sums it up, Your Honor.

Q      And let me ask you some hypothetical questions. For each of the hypothetical questions please assume an individual with the same age, education and work experience as [Plaintiff.] In the first hypothetical please assume an individual who can perform the full range of light work, except he can frequently

handle and finger bilaterally, can occasionally reach overhead bilaterally, can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. Can occasionally balance on narrow or slippery surfaces. Can occasionally stoop, kneel, crouch and crawl. Can tolerate occasional exposure to pulmonary irritants, to vibrations such as power tools and to workplace hazards such as hazardous machinery. Would such an individual be able to perform [Plaintiff's] past work?

A      No, Your Honor, he could not.

Q      Are there any other jobs in the national economy that such a hypothetical individual could perform at the semi-skilled or skilled levels based on his transferable skills?

A      Excuse -- oh, and I didn't quite understand the question. You said something about --

Q      Sure.

A      -- transferable?

Q      Yes, is there any job that such a hypothetical individual could perform with the -- with [Plaintiff's] transferable skills, if there are any that are consistent with this hypothetical?

A      Okay.  I would say a dispatcher, maintenance service, DOT code 239.367-014, sedentary, SVP: 3.

Q      What are the skills that are required of the dispatcher, maintenance service?

A      Recordkeeping, organizational skills, communication and systemizing information and data, routing, posting, following-up.

Q      Are those skills that [Plaintiff] acquired from his past work?

A      Yes, he did, that is correct.

Page 33 of 43

Q     Are there any skills required of that dispatcher, maintenance service occupation that [Plaintiff] does not have from his past work?

A     No.

. . . .

Q     Has your testimony in this case been consistent with the Dictionary of Occupational Titles and the SCO as well as with your professional experience and observations of the labor market? Are those parts of your testimony not specifically covered by the DOT?

A     That is correct, Your Honor.

ALJ:  Mr. Deverell, do you have any questions for [the VE]?

ATTY: Thank you, Your Honor

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY

Q     So, my client here is over 55 for the whole period and, you know, at that point, in order for there to be transferable skills there has to be little or no adjustment in terms of tools, work processes and work settings and it just seems that being a dispatcher, you know, in a sedentary type of environment and on the phone it's just a completely different work setting, completely different tools than, you know, being a maintenance worker or a superintendent. Would you say that there's little to no adjustment in terms of tools, work processes or work settings, Madam Vocational Expert?

A     I -- yes, I would say yes.

Q     Sorry, yes in that --

A       There's little -- yes, because he describes these skills in his past work, so there would be little requirements in terms of training and tools and processes.

Q       And it just seems like a totally different work setting.

A       (No audible response.)

ALJ:  Oh, Mr. Deverell --

ATTY: You know, given that it's all in --

ALJ:  -- that isn't a question.

ATTY: I guess I'm trying to have the expert explain how it's not a different work setting.

ALJ:  Well, [VE], can you tell us, what is the work setting in which a dispatcher for maintenance service works?

VE:   This is pretty -- it's in the -- this job is pretty much clerical in nature.  A maintenance dispatcher making a service is clerical in nature and the Claimant talked about receiving and prioritizing work orders. He talked about supervising. I think he said help -- workers under him -- about three workers and cleaners, you know, for each building and he said he did the prioritizing of the job -- of the orders himself and that aspect of his job was clerical in nature.

BY ATTORNEY:

Q       But the setting is different. One is an office and one is, you know, working on buildings, physically demanding work.

A       Okay, but I --

Q       Is that correct?

A      Okay, but I gave him -- okay, oh, I described his work as a composite job, so he did both. He did --

Q      But neither of those jobs were clerical type of jobs.

A      The only -- the building superintendent was not clerical, but the other aspects of his job as he described it, it was that it was a supervisor, building maintenance. That was clerical in nature.

Q      Even though it's a medium job?

A      Aspects of it was clerical in nature.

Q      And in terms of tools, you know, the tools that he was using as in the composite jobs that you described, I don't think that any of those tools would be used in the sedentary job. It sounds like he'd be using a phone would be mostly the tool.

A      (No audible response.)

ALJ:   Oh, Mr. Deverell, what is the question that you have for [the VE]? I'm not interested in hearing what you personally think because you're not a witness. Your opinion doesn't matter. So what is the question --

ATTY: Okay. So I'd like to know then --

ALJ:  -- that you have for [the VE]?

ATTY: You know, how is there little to no adjustment in terms of tools between these two positions?

VE:    Okay, in terms of the supervisor part of the job, building maintenance he would receive work orders that he would prioritize and it doesn't necessarily come -- if it comes in through the phone, I mean that's a separate job that somebody else would do and the work orders would pretty much be based on to him and he would prioritize it and dispatch

Page 36 of 43

workers to do the maintenance work which he did in his past work.

ATTY: Okay. No further questions, thank you.

(Admin Tr. 47-53; Doc. 11-2, pp. 48-54).

The ALJ then explained in his decision that:

**10.    The claimant has acquired work skills from past relevant work (20 CFR 404.1568).**

The vocational expert testified that the claimant's past relevant work as was semi-skilled with a specific vocational preparation (SVP) codes of 3 and skilled with an SVP of 6 and required the following skills: record keeping, organizational skills, communication, systemizing data, routing, and following up. (Hearing Audio).

**11. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569a and 404.1568(d)).**

. . . .

The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: a maintenance service dispatcher (DOT 239.367-014, which is sedentary with an SVP 3) with about 35,000 jobs available in the national economy.

[The VE] specifically testified that the above position would require little vocational adjustment with the claimant's acquired skills as the position is clerical in nature and the duties are similar to the duties

performed by the claimant, including his reports about receiving and prioritizing work and communicating with supervisors, trainees, and cleaners. These aspects of his past work were clerical in nature and would be present in the performance of the maintenance dispatcher position. (Hearing Audio).

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and its associated publication the SCO. [The VE] testified that areas not covered in the DOT were based on her professional experience and knowledge of the labor market. I find the comprehensive testimony of the vocational expert, in addition to her extensive knowledge, which she relied on when identifying these positions is sufficient to rely on.

Based on the testimony of the vocational expert, I conclude that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes work settings, or the industry.

(Admin. Tr. 24-25; Doc. 11-2, pp. 25-26).

"When transferability appears to be relevant to finding whether a claimant with skilled or semiskilled PRW [past relevant work] can adjust to other skilled or semiskilled work, the ALJ should 'make certain findings of fact' in his or her decision."[47] The required findings are: (1) identification of the acquired work skills; (2) identification of "specific occupations to which the acquire work skills

_____

[47] *Cassley v. Kijakazi*, No. CV 21-226, 2022 WL 1748389, at *1 n.2 (W.D. Pa. May 31, 2022) (citing to SSR 82-41, 1982 WL 31389, at *7).

are transferable;" and (3) citation to "[e]vidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy . . . ."[48]

Here, in conformation with the regulations and SSR 82-41, the ALJ did all three.

The ALJ identified the skills as "record keeping, organizational skills, communication, systemizing data, routing, and following up." (Admin. Tr. 24; Doc. 11-2, p. 25). During the hearing, the ALJ had the VE testify regarding occupations these skills would transfer to and the number of jobs in the economy, and then relied on that testimony: "The vocational expert responded and testified that representative occupations such an individual could perform include: a maintenance service dispatcher (DOT 239.367-014, which is sedentary with an SVP 3) with about 35,000 jobs available in the national economy." (Admin. Tr. 24; Doc. 11-2, p. 25). During the hearing the VE confirmed her testimony was consistent with the DOT except for where she had to rely on her professional experience and observations of the labor market for information not specifically covered by the DOT. (Admin. Tr. 50; Doc. 11-2, p. 51). "This assessment is consistent with what the regulations and rulings

---

[48] SSR 82-41, 1982 WL 31389, at *7.

require of ALJs when they assess a claimant's transferable skills."[49] Therefore, this

is not a basis for remand.

Plaintiff asserts two final arguments relating to the transferable skills

determination. First, Plaintiff argues:

> many of the "skills" identified by the expert are not actually skills that
> would transfer in such a way that give him any advantage in this other
> position. For example, the expert identified communication and
> following up as skills. Tr. 24. It is unclear how such basic functions
> would be considered work skills. POMS DI 25015.017(C) discusses
> particular functions that do not constitute skills and they are analogous

---

[49] *Cassley*, 2022 WL 1748389, at *1 n.2. *See* 20 C.F.R. § 404.1566(e) ("If the
issue in determining whether you are disabled is whether your work skills can be
used in other work and the specific occupations in which they can be used, or there
is a similarly complex issue, we may use the services of a vocational expert or other
specialist. We will decide whether to use a vocational expert or other specialist.);
SSR 82-41, 1982 WL 3389, at *7 ("When the issue of skills and their transferability
must be decided, the adjudicator or ALJ is required to make certain findings of fact
and include them in the written decision. Findings should be supported with
appropriate documentation. When a finding is made that a claimant has transferable
skills, the acquired work skills must be identified, and specific occupations to which
the acquired work skills are transferable must be cited in the State agency's
determination or ALJ's decision. Evidence that these specific skilled or semiskilled
jobs exist in significant numbers in the national economy should be included (the
regulations take administrative notice only of the existence of unskilled sedentary,
light, and medium jobs in the national economy). This evidence may be VS
statements based on expert personal knowledge or substantiation by information
contained in the publications listed in regulations sections 404.1566(d) and
416.966(d)."); Program Operations Manual System DI 25015.17(H) ("This evidence
may include statements by a Vocational Specialist (VS) based on expert personal
knowledge or substantiation by information contained in the publications listed in
regulations sections 404.1566(d) and 416.966(d)."), DI 25015.17(I) ("Consider all
relevant vocational sources and make a judgment about whether skills gained in
PRW are useable in other work within the claimant's RFC or MRFC.").

> to those. It discusses actions such as greeting customers and operating standard phones, which is similar to the expert stating that the Plaintiff has "communication skills." Additionally, following up does not provide any specific skill set. Any individual within 30-days, the span on unskilled work training periods, can be taught how to follow-up on a matter. As such, this is also not a skill.

(Doc. 12, pp. 15-16). To the extent that two of the seven skills that the VE identified do not appear to meet the POMS definition of skills, it is unclear, and Plaintiff does not argue, how this is an error by the ALJ, and if it were, how it was a harmful error requiring remand.[50] The Court will not attempt to make Plaintiff's arguments for him, and therefore finds this is not a basis for remand.

Finally, Plaintiff argues:

> the position of maintenance service dispatcher is a semi-skilled position at SVP 3. Semiskilled occupations are more complex than unskilled work and distinctly simpler than the more highly skilled types of jobs. POMS DI 25015.017(C). They contain more variables and require more judgment than unskilled occupations. *Id*. Even though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled. *Id*. Therefore, one needs to pay close attention to the actual complexities of the job tasks required to perform the work. *Id*. Per 20 C.F.R. §§ 404.1568(b) and 416.968(b), semiskilled jobs "may require alertness and close attention ... coordination and dexterity ... as when hands or feet must be moved quickly to do repetitive tasks." These descriptive terms are not intended to illustrate types of skills in and of themselves.

---

[50] Again, the POMS "lack[s] the force of law and create[s] no judicially-enforceable rights." *Bordes*, 235 F.App'x at 859.

The VE identified the following skills: (1) recordkeeping; (2) organizational skills; (3) communication); (4) systemizing information and data; (5) routing; (6) posting; and (7) following up. (Admin. Tr. 49; Doc. 11-2, p. 50). The ALJ cited to all of these skills in his decision. (Admin. Tr. 24; Doc. 11-2, p. 25).

The terms describe worker traits (aptitudes or abilities) rather than acquired work skills. The position of maintenance service dispatcher requires frequent reaching and handling. *Selected Characteristics of Occupations*, page 337. Given this requirement of the position, it is likely that the position is only a semiskilled position due to the coordination and dexterity required. This shows that the job is akin to an unskilled job, as it is only given a SVP 3 rating given the manipulative demands of the position making it more than unskilled. Pursuant to POMS DI 25015.017(E) skills can never transfer to unskilled work.

(Doc. 12, p. 16) (footnote omitted).

In response, the Commissioner argues that the ALJ "was entitled to rely on the vocational expert's testimony and the DOT, rather than the lay speculation of Plaintiff's counsel." (Doc. 14, p. 16). We agree with the Commissioner. "Skills, levels of skills and potential occupations to which skills from PRW may be transferred are for the adjudicator or ALJ to determine (with the assistance, when required, of a VS or occupational reference sources)."[51] Moreover, Plaintiff cites to no authority suggesting it is the purview of this Court (or Plaintiff's counsel) to analyze the DOT and decide whether it is correct in its labelling of an occupation as semiskilled, or to decide that the VE, with over twenty years of vocational experience, was incorrect in identifying dispatcher, maintenance service as a semiskilled occupation. The Court is satisfied that the ALJ correctly relied upon the

---

[51] SSR 82-41, 1982 WL 31389, at *4.

VE testimony to support his conclusion that work for the Plaintiff is available in the national economy.

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for the Court to find him entitled to Social Security Disability Insurance benefits or to remand this case for a further hearing be Denied as follows:

(1)    The Commissioner's final decision is AFFIRMED.

(2)    Final judgment in the Commissioner's favor will be issued separately.

(3)    An appropriate order will be issued.


Date: March 29, 2024                     BY THE COURT

                                         _s/William I. Arbuckle_
                                         William I. Arbuckle
                                         U.S. Magistrate Judge